IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MELANIE HOOD-WILSON, | * | |
| PLAINTIFF, | * | |
| v. | * | Civil Action No. RDB-20-0124 |
| COMMUNITY COLLEGE OF BALTIMORE COUNTY, | * | |
| | * | |
| DEFENDANT. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Melanie Hood-Wilson ("Plaintiff" or "Hood-Wilson") brings this action against her former employer, Defendant Community College of Baltimore County ("Defendant" or "CCBC"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA")[1], Md. Code Ann., State Gov't, § 20-602. Presently pending is Defendant's Motion to Dismiss (ECF No. 12). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 12) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found.*

---

[1] In her Opposition, Hood-Wilson concedes the dismissal of her claims under the Maryland Fair Employment Practices Act (Counts II and IV). *See* note 6 *infra*.

*v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Hood-Wilson is an African-American woman who was hired by CCBC in or before 2011.[2]  (Compl. ¶¶ 16, 18, ECF No. 1.)  She worked as the Director of a CCBC program known as "Single Step" until November 17, 2018, when she voluntarily resigned.  (*Id.* ¶¶ 3, 17, 46.)

Single Step is a workforce development program for individuals with disabilities.  (*Id.* ¶ 17.)  As Single Step's Program Director, Hood-Wilson was responsible for its management, including fiscal oversight.  (*Id.* ¶¶ 10, 18.)  Plaintiff asserts that she received more than ten local and statewide honors and recognitions for her work for CCBC (*Id.* ¶ 19), and that, under her leadership, Single Step grew from a program with an annual budget of $40,000 that supported eight students to a program with an annual budget which exceeded $500,000 that supported more than 300 students (*Id.* ¶ 18).

Hood-Wilson's supervisor was Louise Slezak ("Slezak"), the head of the Department of Continuing Education and Workforce Development.  (*Id.* ¶ 20.)  Slezak supervised three other directors, Matthew Bernardy ("Bernardy"), Steven Jurch ("Jurch"), and Michael Tan ("Tan"), all of whom were white and male.  (*Id.* ¶ 21.)  Hood-Wilson alleges Slezak downplayed her achievements and was "more congratulatory" of the white male directors.  (*Id.* ¶ 22.)  Hood-Wilson also alleges that Slezak told her she was a "good director from 30 feet" and she did not consider Hood-Wilson's perceived accomplishments to be "relevant to whether

---

[2]  Plaintiff's complaint contains conflicting allegations about her hire date.  She alleges both that she "worked for the CCBC for 18 years" (Compl. ¶ 16, ECF No. 1), and that she was "hired at CCBC in 2011" (*Id.* ¶ 18).

[she was] a good director." (*Id.* ¶ 23.) Slezak's criticisms were also allegedly reflected in Hood-Wilson's evaluations. (*Id.*)

Hood-Wilson also more generally asserts that Slezak would "make biased remarks or ask questions about Blacks and then sarcastically look to Mrs. Hood-Wilson to humiliate her as if she were a representative for all Blacks." (*Id.* ¶¶ 24-25.) Shortly after Slezak was promoted to Dean of Community Education, Hood-Wilson alleges that Slezak made reference to people in "the city jumping rent" and asked Hood-Wilson, "you'd know about that right?" (*Id.*) In addition, Slezak allegedly remarked to Hood-Wilson that she was surprised "[t]here were a lot of Black people" in Martha's Vineyard, and that she "didn't like it there." (*Id.* ¶ 26.)

As Program Director, Hood-Wilson's duties included supervision of two assistants who worked for the Single Step Program. (*Id.* ¶¶ 32, 77.) On or about July 26, 2018, CCBC's payroll department informed Hood-Wilson that her two assistants, who also worked as adjunct professors at the college, had claimed compensation for overlapping hours, submitting timesheets compensating them for adjunct hours when they were also claiming time for their part-time coordinator positions. (*Id.* ¶¶ 32, 36.) An audit in August 2018 showed that Hood-Wilson's two assistants were overpaid by approximately $5,112.90. (*Id.* ¶ 33.) The audit also revealed that two of Hood-Wilson's white male colleagues, Jurch and Tan, also supervised employees charged with submitting overlapping hours. (*Id.* ¶¶ 34, 36.) Hood-Wilson asserts that Slezak took no corrective action against her white male colleagues, instead placing "all of the blame on Mrs. Hood-Wilson." (*Id.* ¶¶ 34, 37.)

On or about September 14, 2018, CCBC started a search for three Assistant Deans. (*Id.* ¶ 42.) Slezak was on the search committee. (*Id.*) Plaintiff alleges that she interviewed for one

3

of the positions on or about October 3, 2018 and that she was the only female candidate. (*Id.* ¶¶ 43, 76, 83.)  On November 2, 2018, CCBC announced that it had selected Jay Boius ("Boius") and two of Plaintiff's colleagues, Bernardy and Jurch, to fill the three Assistant Dean positions. (*Id.* ¶ 44.)  Hood-Wilson's Complaint alleges only that Bernardy, Boius, and Jurch were white males, but does not allege specific facts about their qualifications nor does the Complaint specify for which Assistant Dean position Hood-Wilson applied or the identity or qualifications of the candidate selected for that particular position. (*Id.*)

On or about November 16, 2018, CCBC demoted the two part-time coordinators/adjuncts who worked under Hood-Wilson for claiming compensation for overlapping hours. (*Id.* ¶ 45.)  Hood-Wilson claims she feared Slezak was also building a record against her to justify her termination. (*Id.* ¶¶ 45–46.)  On November 17, 2018, Hood-Wilson voluntarily resigned. (*Id.* ¶ 46.)  There is no indication of any adverse employment action taken against her.  Following her resignation, Hood-Wilson received a warning letter from Slezak on December 12, 2018, for "concerns about fiscal oversight when dealing with contracts, resources and employees." (*Id.* ¶¶ 47–49; *see also* Warning Letter, ECF No. 15-1[3].)  Hood-Wilson contends that she was the only employee held responsible for overpayments made to her assistants in her program and that Michael Tan, her white male colleague, was never so disciplined. (Compl. ¶¶ 34, 48, 49, ECF No. 1.)  Instead, she alleges that Tan was offered a pay increase based on her "anticipated demotion." (*Id.* ¶ 51.)

---

[3]  The Court will consider the Warning Letter provided by Hood-Wilson in her Opposition, as it is incorporated into her Complaint by reference. *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016).  The Letter is dated November 26, 2018, but Hood-Wilson did not receive it until December 12, 2018 when she met with Slezak. (*See* Warning Letter, ECF No. 15-1; Compl. ¶ 47, ECF No. 1.)

4

On December 19, 2018, Hood-Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 13; *see* EEOC Charge, ECF No. 12-2[4].)  The charge alleges race- and sex-based discrimination, citing Hood-Wilson's non-promotion, the disciplinary actions stemming from the fraudulent timesheets, as well as continuous harassment from Slezak.  (EEOC Charge, ECF No. 12-2.)  The EEOC having determined not to take action, Hood-Wilson received a right to sue letter and withdrew her case from the EEOC.  (Compl. ¶ 13, ECF No. 1.)  She received the right to sue letter on October 21, 2019.[5]  (*Id.* at ¶ 14.)  On January 15, 2020, Hood-Wilson filed the present action against CCBC.  (*Id.*)

In her Complaint, Hood-Wilson initially asserted four claims against CCBC: violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, on the basis of race (Count I) and sex (Count III), and violations of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-602, on the basis of race (Count II) and sex (Count IV).  (*Id.* at ¶¶ 57–86.)  On March 24, 2020, CCBC filed the presently pending Motion to Dismiss.  (ECF No. 12.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

---

[4]   Defendant provided Hood-Wilson's EEOC Charge, which the Court may consider as integral to the Complaint. *See Goines*, 822 F.3d at 166 (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).
[5]   In Maryland, a deferral state, a claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") must be filed with the EEOC within 300 days of the alleged discriminatory action. *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001).  If the EEOC dismisses the charge, or if the plaintiff requests a right to sue notice, a plaintiff has ninety days from receiving his or her notice of dismissal and right to sue letter to file an action in court.  42 U.S.C. § 2000e-5(f)(1).

R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter [taken as true] to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV*, LLC, 846 F.3d 757, 765 (4th Cir. 2017). A court, however, is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67

(4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

Defendant seeks dismissal of Hood-Wilson's Complaint on several bases. In Hood-Wilson's opposition, she concedes that her claims under MFEPA (Counts II and IV) cannot be sustained and should be dismissed,[6] and that her complaint fails to state a Section 1981 claim, or a hostile work environment, retaliation, or constructive discharge claim, under any statute. (ECF No. 15 at 2, 11 n.4, 17.) Accordingly, Plaintiff's claims for race- and sex-based

---

[6] Hood-Wilson explains that her MFEPA claims "cannot be sustained as she did not exhaust them." (Pl.'s Opp'n at 2, ECF No. 15.) However, the issue with Hood-Wilson's MFEPA claims is not one of exhaustion. Instead, as Defendant points out, the Eleventh Amendment bars Hood-Wilson's MFEPA claims against CCBC, which, as a Maryland community college, is a state agency which has not waived its Eleventh Amendment immunity as to claims in federal court under MFEPA. *See Pense v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 926 F.3d 97, 101-02 (4th Cir. 2019); *Williams v. Bd. of Trustees*, No. CCB-03-2123, 2004 WL 45517, at *4 (D. Md. Jan. 8, 2004) ("a Maryland community college and its board of trustees are state agencies…"); *see also Middlebrooks v. Univ. of Maryland*, 980 F. Supp. 824, 827 (D. Md. 1997) ("The Eleventh Amendment bars federal courts from hearing claims brought by a citizen against her own state…[t]he block extends to suits against state agencies….").

discrimination under MFEPA (Counts II and IV) will be dismissed with prejudice. Her claims for race- and sex-based discrimination under Title VII are considered below.

## I. Plaintiff's Complaint Improperly Names Defendants.

CCBC asserts, and Hood-Wilson concedes, that CCBC is not subject to suit and that the proper party is the Board of Trustees of the Community College of Baltimore County. (Def.'s Mot. at 16, ECF No. 12; Pl.'s Opp'n at 12-13, ECF No. 15.); *see Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (explaining that as to community colleges under Maryland law, "'[e]ach board of trustees may sue and be sued,'" whereas "[n]o such provision is included in the statutes to empower the college itself to sue or be sued"); MD. CODE ANN., EDUC. § 16-203(k).

Hood-Wilson argues that she is entitled to amend her pleadings under Rules 15(a) and 15(c) of the Federal Rules of Civil Procedure to name the Board of Trustees as the proper defendant, if necessary. (ECF No. 15 at 14.) While this Court has discretion to allow amendment for this purpose, Hood-Wilson cannot otherwise state a claim based on the underlying circumstances of her complaint, rendering any amendment futile. *See Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 308–09 (D. Md. 2015) (quoting *Rawlings v. City of Baltimore*, No. BEL-10-2077, 2011 WL 1375603, at *4 (D. Md. Apr. 12, 2011) ("An amendment is futile if it "'would not survive a motion to dismiss.'").[7]

## II. Title VII Claims.

---

[7] As explained *infra*, Hood-Wilson's remaining claims for race- and sex- based discrimination under Title VII are dismissed with prejudice as the clear allegations in the Complaint do not state claims for discriminatory enforcement of discipline or failure to promote. Accordingly, any amendment to the Complaint would be futile.

8

Plaintiff's Complaint brings claims for race- (Count I) and sex-based (Count III) discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Prior to filing a Title VII claim, in federal court, "a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC." *Edelman v. Lynchburg Coll.*, 228 F.3d 503, 506 (4th Cir. 2000). If timely raised by the defendant, a plaintiff's failure to exhaust administrative remedies warrants dismissal under Rule 12(b)(6) of the Federal Rules. *See, e.g., Stewart v. Iancu*, 912 F.3d 693, 701-02 (4th Cir. 2019); *see also Carter v. Montgomery Cty.*, TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019) (construing motion to dismiss under Rule 12(b)(1) for failure to exhaust administrative remedies as a motion to dismiss under Rule 12(b)(6) in light of the Supreme Court's decision in *Fort Bend Cty v. Davis*, 139 S. Ct. 1843, 1846 (2019)). The exhaustion requirement ensures that the charged party receives notice of the claims it faces. *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). A subsequent lawsuit must then limit its claims to those included in the administrative charge and those "reasonably related" to the claims described in the administrative charge. *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).

In this case, Hood-Wilson appears to have exhausted available administrative remedies with the EEOC regarding the alleged discriminatory action under Title VII. *See* 29 C.F.R. § 1614. Defendant provided the EEOC complaint and Hood-Wilson claims that she received a right to sue letter from the EEOC on October 21, 2019. (Compl. ¶ 14, ECF No. 1; *see also* ECF No. 12-2.) Accordingly, Hood-Wilson's Title VII race- and sex-based discrimination claims for disparate discipline and non-promotion are properly before this Court.

### A. Discriminatory Enforcement of Discipline.

As the United States Court of Appeals for the Fourth Circuit explained in *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745 (4th Cir. 2017), a plaintiff may establish discrimination under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action, or by relying on the burden shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swaso*, 698 F. App'x. at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007)). Under the *McDonnell Douglas* burden shifting framework, the plaintiff must first make out a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Id.* (quoting *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

CCBC does not dispute that Hood-Wilson, an African-American female, is a member of two protected classes. However, Hood-Wilson has not pled facts reflecting that she was performing satisfactorily at the time of the alleged discipline, despite her "reject[ion]" of "these contentions." In her Complaint, Hood-Wilson confirms that the August 2018 audit revealed overpayments totaling over $5,000 to her program's assistants, a few months prior to the

warning letter for poor fiscal oversight based on these overpayments. (Compl. ¶ 33; Warning Letter, ECF No. 15-1.)

Hood-Wilson has also failed to identify an adverse employment action as required by *McDonnell Douglas*. An adverse action necessary to support a discrimination claim is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (quoting *Hoyle v. Freightliner, LLC*, 659 F.3d 321, 337 (4th Cir. 2011)). Here, Hood-Wilson received a warning letter on December 12, 2018, twenty-five days after she had already submitted her voluntary resignation. (Compl. ¶¶ 46–47, ECF No. 1.) The warning letter, received well after her voluntary resignation, cannot amount to an adverse action because it did not result in a significant change to employment status, salary, or benefits. *See Finnegan v. Dep't of Pub. Safety and Corr. Servs.*, 184 F. Supp. 2d 457, 461 (D. Md. 2002) (plaintiff failed to state a claim because "verbal reprimands or counseling letter" was not adverse action).

Hood-Wilson also fails to identify different treatment of similarly situated employees outside of her protected class. To be similarly situated, an employee must have "engaged in the same conduct without . . . mitigating circumstances that would distinguish [her] conduct or the employer's treatment of [her] for it." *Heyward v. Monroe*, 166 F.3d 332 (4th Cir. 1998) (table opinion) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1982)). Although the Fourth Circuit has stated that "the comparison [between offenses] will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances," *Cook v. CSZ Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.

1993), "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Hood-Wilson alleges that she, as the Single Step Program Director, received a letter warning her of "concerns" about "fiscal oversight when dealing with contracts, resources and employees," after the August 2018 audit revealed her program assistants were overpaid by approximately $5,112.90. (Compl. ¶¶ 32, 33, 49.) She asserts that all directors had signatory authority for timesheets, and the audit revealed that two of her white male colleagues, Jurch and Tan, also supervised employees charged with submitting overlapping hours. (*Id.* ¶¶ 34, 36.) Neither Jurch nor Tan, however, are alleged to have mismanaged payments to assistants within their respective programs. (*Id.*) Hood-Wilson cannot show that Jurch and Tan were similarly situated to her, when neither of those employees are alleged to have mismanaged the revenue of their respective programs. These allegations fail to show Hood-Wilson was treated differently than "similarly situated" employees outside her class. Accordingly, Hood-Wilson's claims of discrimination under Title VII for disparate discipline must be dismissed.

### B. Failure to Promote.

To establish a prima facie case of discrimination for failure to promote, a plaintiff must prove by a preponderance of the evidence that she (1) belongs to a protected group; (2) applied for the positions at issue; (3) was qualified for those positions; and (4) was rejected under circumstances that give rise to an inference of unlawful discrimination. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996).

In this case, Hood-Wilson was denied a single promotion in favor of an unidentified candidate.[8] (Compl. ¶¶ 4, 53, ECF No. 1.) As a Black female, Hood-Wilson is a member of two protected classes. Nevertheless, her allegations are insufficient to allege that she was qualified for the promotions in question. Although Hood-Wilson perceived her own work as satisfactory, her supervisor, Slezak, did not. (*Id.* ¶¶ 23, 24.) As explained by the Fourth Circuit in *Evans*, "[i]t is the perception of the decision maker which is relevant," not the self-assessment of the plaintiff. 80 F.3d. at 960–61 (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). Moreover, even assuming she was qualified, Hood-Wilson fails to allege facts that show her application was rejected for unlawful reasons. Hood-Wilson alleges that she interviewed for one of the three Assistant Dean positions, but she does not identify the specific position to which she applied. (Compl. ¶¶ 42–44, ECF No. 1.) Nor does she identify who CCBC selected for that position or describe any qualifications about the chosen candidate that would lead to a reasonable inference that her candidacy was rejected for discriminatory reasons. The allegation that Hood-Wilson was equally as qualified as three selected applicants who are white males is insufficient to state a claim. *See McCleary-Evans v. Md. DOT*, 780 F.3d 582, 586 (4th Cir. 2015) (holding allegations that chosen candidate was outside protected class was not enough); *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir. 1992) ("'[T]he employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria.'" (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). As a result, Plaintiff has failed to state an actionable failure to promote claim under Title VII.

---

[8] Though she identifies Boius, Bernardy, and Jurch as the candidates selected to fill the three Assistant Dean positions, Hood-Wilson fails to identify the candidate or the qualifications of the candidate chosen for the specific promotion to which she applied. (Compl. ¶ 44, ECF No. 1.)

13

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 12) is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated: August 3, 2020

                                        _____/s/_____

                                      Richard D. Bennett
                                      United States District Judge