**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MELANIE HOOD-WILSON, )<br><br>Plaintiff, )<br><br>v. )<br><br>BOARD OF TRUSTEES OF THE )<br>COMMUNITY COLLEGE OF )<br>BALTIMORE COUNTY, )<br><br>Defendant. ) | Civil Action No. 20-cv-00124-LKG<br><br>Dated:  November 26, 2024 |

<u>**MEMORANDUM OPINION**</u>

**I.      INTRODUCTION**

In this employment discrimination matter, the Plaintiff, Melanie Hood-Wilson, asserts disparate treatment discrimination claims, based upon race and gender, against the Defendant, the Board of Trustees of the Community College of Baltimore County ("CCB"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.  ECF No. 36.  The Defendant has moved for summary judgment in its favor on these claims, pursuant to Fed. R. Civ. P. 56.  ECF No. 80.  This motion is fully briefed.  ECF Nos. 80, 81, 89, 90, 92, 93.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** CCB's motion for summary judgment and (2) **DISMISSES** the amended complaint.

1

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Factual Background

In this employment discrimination matter, the Plaintiff asserts disparate treatment race and gender discrimination claims against CCB, arising from her non-selection for the position of Assistant Dean for Workforce Solutions, pursuant to Title VII.  ECF No. 36.  Specifically, the Plaintiff asserts claims in the amended complaint for disparate treatment based upon race (Count I) and disparate treatment based upon gender (Count II).  *Id*. at ¶¶ 54-70.  As relief, the Plaintiff seeks, among other things, to recover monetary damages, front pay, future benefits and attorneys' fees and costs from CCB.  *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff Melanie Hood-Wilson self-identifies as an African American female and she is a former administrator for CCB.  *Id*. at ¶ 2.

Defendant CCB is a post-secondary education institution, which operates several campuses located in Baltimore City and Baltimore County, Maryland.  *Id*. at ¶ 1.

<u>The Plaintiff's Employment History</u>

As background, CCB hired the Plaintiff to serve as an adjunct instructor for the college in February 2001.  ECF No. 81 at ¶ 1.  The Plaintiff was employed as the Coordinator of CCBC's Single Step program from her hiring in 2001 until 2006, when she became the Director of Special Populations.  *Id*. at ¶ 2.

In her position as Director of Special Populations, the Plaintiff was responsible for all aspects of her program, including budget management and financial oversight.  *Id*. at ¶ 4. Plaintiff served in that role through 2018.  *Id*. at ¶¶ 3, 5.  Dean Louise Slezak (Caucasian Female) was the Plaintiff's immediate supervisor when she served as the Director of Special Populations.  *Id*. at ¶¶ 20-21.

---

[1] The facts recited in this memorandum opinion are derived from the amended complaint; the Defendant's motion for summary judgment and the memorandum in support thereof; the parties' joint statement of undisputed facts; the Plaintiff's response to the joint statement of undisputed facts; and the parties' joint record exhibits.  ECF Nos. 36, 80, 80-1, 81, 90, 93.  Unless otherwise stated, the facts recited herein are undisputed.

<u>The Plaintiff's Non-Selection For The Assistant Dean Position</u>

On September 14, 2018, CCB's Executive Dean for Continuing Education & Online Learning, Michael N. Netzer (Caucasian Male), emailed CCB's Continuing Education Staff with job descriptions for three newly-created Assistant Dean positions and directed any interested applicants to apply by submitting their resumes *via* email. ECF No. 93 at 460, 476. And so, the Plaintiff submitted an application to serve as the Assistant Dean of Workforce Solutions on September 14, 2018. ECF No. 81 at ¶ 5; *see* ECF No. 93 at 459, 461-64.

At the time of her application, the Plaintiff had served as the interim chair of the Baltimore County Department of Economic and Workforce Development, leading the Workforce Innovation and Opportunity Act ("WIOA") planning and writing team for services to individuals with barriers to employment. ECF No. 89-1 at ¶ 16; *see also* ECF No. 93 at 462. Specifically, this work involved partnering with agencies across Baltimore County to develop strategies to improve access and funding streams to services. ECF No. 89-1 at ¶ 16.

Matthew Bernardy, (Caucasian Male) and Don Elliot (Caucasian Male) also applied for the position of Assistant Dean of Workforce Solutions.[2] ECF No. 80-1 at ¶ 11; ECF No. 81 at ¶ 6; *see also* ECF No. 93 at 470-74. Mr. Bernardy was ultimately selected to fill this position. ECF No. 81 at ¶ 12.

At the time of his application, Mr. Bernardy was serving as Director of Connections to Employment for CCB and also as the Interim Director of CCB's Center for Adult and Family Literacy ("CAFL"). ECF No. 80-1 at ¶ 7; *see* ECF No. 93 at 470, 472. Mr. Bernardy also had experience managing large numbers of people, which CCB maintains is an important skill for the Assistant Dean of Workforce Solutions position. ECF No. 80-1 at ¶ 8. Prior to his employment with CCB, Mr. Bernardy had operational responsibility for the Advanced Skills Learning Center, a $1.8 million nonprofit adult technical education center focused on workforce solutions and job placements. *Id*. at ¶ 9; *see* ECF No. 93 at 472-73.

CCB's selection process for filling the Assistant Dean of Workforce Solutions position involved a five-person search committee, which was tasked with interviewing the candidates for

---

[2] CCB maintains that Mr. Bernardy is Hispanic. ECF No. 80-1 at ¶ 11. But the Plaintiff alleges that Mr. Bernardy is Caucasian. ECF No. 90-1 at ¶ 11.

the three new Assistant Dean positions. ECF No. 81 at ¶ 7. The search committee's members included: Dean Netzer; Dean Slezak; Kenneth Buck (African American Male); Stephen Kabriel (Caucasian Male); and Nikki Rogers (Caucasian Female). *Id*.

The search committee developed a set of 14 interview questions to ask each applicant. *Id*. at 8. CCB maintains that these questions were "focused on having the candidates demonstrate specific basic knowledge and designed to draw out responses involving experiences, knowledge, and skills that the committee considered essential for the Assistant Dean positions." ECF No. 80-1 at ¶ 10. Each member of the search committee issued a score ranging from one (lowest) to five (highest) for an applicant's answer to each question. ECF No. 81 at ¶ 9.

Following each interview, the search committee held a discussion to review the members' scoring decisions for the interviewed candidate. ECF No. 80-1 at ¶ 12; ECF No. 90 at ¶ 12. The search committee then aggregated its members' individual interview scores, resulting in a final cumulative interview score for each applicant. ECF No. 90 at ¶ 13.

It is undisputed that the applicants' cumulative interview scores were "an important part of selecting the Assistant Dean for Workforce Solutions." ECF No. 80-1 at ¶ 14; *see* ECF No. 90 at ¶ 14. It is also undisputed that Mr. Bernardy received the highest interview score (285) of the three applicants for the Assistant Dean of Workforce Solutions position, and that the Plaintiff received the lowest score (181) of the three applicants for the position. ECF No. 81 at ¶¶ 10-11. It is further undisputed that the Plaintiff's highest interview scores were awarded by search committee members Dean Netzer and Dean Slezak. ECF No. 80-1 at ¶ 17; ECF No. 90 at ¶ 17.

Based upon the results of the search committee's selection process, the search committee recommended Mr. Bernardy for the Assistant Dean of Workforce Solutions position. ECF No. 80-1 at ¶ 18. CCB contends that Mr. Bernardy was the most qualified applicant for the job, "[b]ased on his relevant experience, qualifications, and skills, which were demonstrated in his resume and reflected in the scoring of his interview responses." *Id*.

In this regard, Dean Netzer testified during his deposition that Mr. Bernardy was the most qualified applicant for the position, because he: (1) demonstrated a history of managing large organizations and budgets; (2) had experience understanding all facets of Workforce Solutions programming; (3) had existing relationships with the agencies involved in Workforce Solutions programming; (4) had extensive experience with WIOA funding; and (5) had significant

experience writing and managing grants.  ECF No. 93 at 479.  Dean Netzer also testified that Mr. Bernardy was more qualified than the Plaintiff for the Assistant Dean of Workforce Solutions role, because the Single Step program that the Plaintiff had managed is relatively small and has a narrow focus.  *Id.* at 480.

Dean Netzer further testified that the Plaintiff was less qualified for the Assistant Dean position than Mr. Bernardy, because she did not demonstrate a broad background in welfare-to-work and workforce development systems, a familiarity with WIOA, or experience with writing or managing grants or performance-based funding.  *Id.*  And so, Dean Netzer, as the decisionmaker with respect to this hire, offered Mr. Bernardy the position.  ECF No. 90 at ¶ 18.

<u>The Plaintiff's Resignation</u>

On November 29, 2018, the Plaintiff tendered her resignation, effective as of February 1, 2019.  ECF No. 81 at ¶ 13; *see* ECF No. 93 at 616.  The Plaintiff alleges that, prior to the date on which she tendered her resignation, Dean Slezak demoted two part-time coordinators under her direct supervision, because they submitted timesheets with "overlapping" hours.  ECF No. 36 at ¶¶ 32, 45.  The Plaintiff also alleges that she feared that Dean Slezak "had been building a record against her to justify [her] termination."  *Id.* at ¶ 46.

On December 12, 2018, Dean Slezak issued a Corrective Action Notice to the Plaintiff, which provides, in relevant part:

> As you are aware, I am very concerned with your ability to manage critical details, provide accurate documentation/record keeping and provide fiscal oversight when dealing with contracts, resources and employees.  I included the same concerns in your evaluations, through numerous conversations and emails.  Most recently you authorized payment to two employees[] for time worked that was inaccurate, went against policy and was poorly documented.  These incidents are serious financial improprieties. . . .
>
> Over the past several evaluations and throughout the year, I have met several times with you to discuss the importance of accuracy, oversight and fiscal management.  You were not able to present a reasonable explanation or provide additional information to satisfactorily explain any of these serious improprieties.
>
> Therefore, as a result of our investigation, and after our discussions we determined that you improperly and negligently mismanaged

>     your fiscal responsibilities.  Your poor management and
>     negligence placed CCBC at risk. . . .
>
>     In the absence of compelling justification for your unacceptable
>     actions and behavior, this is a final warning/last chan[c]e.

ECF No. 93 at 617-18.  CCB maintains that this Corrective Action Notice was issued "separate
and independent from the search process for the [A]ssistant [D]ean position."  ECF No. 80-1 at ¶
21.  The Plaintiff resigned from her position with CCB on February 1, 2019.  ECF No. 81 at ¶¶
13-14.

<u>The Plaintiff's EEO Complaint</u>

On December 19, 2018, the Plaintiff filed a charge of discrimination with the Maryland
Commission on Civil Rights ("MCCR"), alleging race and gender discrimination under Title VII.
*Id*. at ¶ 15.  In the charge of discrimination, Plaintiff stated:

>     I have performed my duties without negative evaluation since
>     employed.  I was continuously harassed by Ms. Louis[e] Slezak,
>     Dean.  I was unknowingly accused of authorizing payment to two
>     employees for inaccurate time work.  Similarly situated co-worker
>     Mr. Michael Tan[] authorized payment to employees for
>     unknowingly inaccurate time work, and was not discipline[d].  On
>     November 2, 2018, I applied for a posted position of Assistant
>     Dean for the Workforce Solution, I was denied promotion,
>     similarly situated co-worker Mr. Matthew Bernardy (White), with
>     less experience and track record via the metrics of evaluation was
>     promoted.  I constructively discharged on November 2, 2018,
>     when continuous harassment from Ms. Slezak, became unbearable.

ECF No. 93 at 633.

On October 1, 2019, the MCCR notified CCB that it had closed the investigation into the
Plaintiff's charge, because the Plaintiff had requested a right-to-sue letter from the United States
Equal Employment Opportunity Commission ("EEOC").  ECF No. 90 at ¶ 25.  The Plaintiff
received her right-to-sue letter from the EEOC on October 21, 2019.  ECF No. 36 at ¶ 14.

<u>The Plaintiff's Allegations</u>

The Plaintiff commenced this employment discrimination matter on January 15, 2020.
ECF No. 1.  The original complaint alleges disparate treatment claims based upon race and

gender, and failure-to-promote claims based upon race and gender, in violation of Title VII and the Maryland Fair Employment Practices Act ("MFEPA"). *Id.*

After the Court granted CCB's motion to dismiss the complaint on August 3, 2020, the Plaintiff noted a limited appeal to the United States Court of Appeals for the Fourth Circuit, to challenge the dismissal of her failure-to-promote claims under Title VII. ECF Nos. 19, 20, 22. The Fourth Circuit reversed the Court's August 3, 2020, decision in this regard and remanded the case on July 16, 2021. ECF No. 26.

On remand, the Fourth Circuit directed the Plaintiff to file an amended complaint consistent with the Fourth Circuit's decision. ECF No. 28. After the Plaintiff filed the amended complaint, the parties engaged in discovery on Plaintiff's remaining claims. *See* ECF No. 71.

In the amended complaint, the Plaintiff alleges that CCB discriminated against her, based upon her race and gender, by: (1) failing to promote her to the position of Assistant Dean of Workforce Solutions and (2) disciplining her for timecard errors committed by her subordinates. ECF No. 36 at ¶¶ 54-70. And so, the Plaintiff alleges that CCB treated her less favorably than other similarly situated individuals who were employed by CCB.

To support her disparate treatment discrimination claims, the Plaintiff alleges that CCB selected Matthew Bernardy for the Assistant Dean of Workforce Solutions position, even though he "was far less qualified than [Plaintiff] in both tenure, experience and in all areas pertinent to" the role. *Id.* at ¶ 60. Plaintiff also alleges that CCB discriminated against her with regards to the discipline of two of her subordinates, because two other Directors at CCB were not disciplined when their subordinates submitted timesheets with overlapping hours. *Id.* at ¶ 36.

In this regard, Plaintiff alleges that another supervisor, Michael Tan (Caucasian Male), who served as Director of ACCESS for CCB, approved some of the timesheets with "overlapping" hours that had been submitted by the same two employees working under her. *Id.* at ¶ 34. The Plaintiff also alleges that Steven Jurch (Caucasian Male), who was serving as the Director of Allied Health, approved timesheets for another employee that contained similar deficiencies. *Id.* at ¶ 36. But, the Plaintiff contends that Dean Slezak took no corrective action against Mr. Tan or Mr. Jurch for these timesheet errors, despite disciplining Plaintiff for the same infraction. *Id.* at ¶¶ 37, 62, 69. And so, the Plaintiff alleges that CCB discriminated against her when Dean Slezak issued a Corrective Action Notice, which was "the last step before

7

termination," even though she "had never been disciplined prior to" the issues with her subordinates' timesheets. *Id*. at ¶¶ 48, 53.

Lastly, the Plaintiff relies upon several alleged statements and conduct by Dean Slezak to show discriminatory animus. Specifically, the Plaintiff alleges that Dean Slezak: (1) downplayed her achievements in front of her colleagues "while being noticeably more congratulatory of the work of [the Plaintiff's] White male colleagues;" (2) "ask[ed] blatantly racist questions about Blacks and then sarcastically look[ed] to [the Plaintiff] to humiliate her as if she were a representative for all Blacks;" (3) referred to people in Baltimore City, which is majority Black, as "jumping rent;" and (4) stated that she "didn't like it" in Martha's Vineyard, after expressing surprise that "[t]here were a lot of Black people" there. *Id*. at ¶¶ 22, 24-26. And so, the Plaintiff contends that CCB has subjected her to disparate treatment based upon her race and gender, in violation of Title VII. *See generally id*.

### B. Procedural History

The Plaintiff commenced this action on January 15, 2020. ECF No. 1. On August 17, 2021, the Plaintiff filed an amended complaint. ECF No. 36.

On May 14, 2024, the Defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF No. 80. On May 14, 2024, the parties filed a joint statement of undisputed facts. ECF No. 81.

On June 21, 2024, the Plaintiff filed a response in opposition to the Defendant's motion for summary judgment and a response to the joint statement of undisputed facts. ECF Nos. 89, 90. The Defendant filed a reply brief on July 17, 2024. ECF No. 92. On July 24, 2024, the parties filed their joint record exhibits. ECF No. 93.

The Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

### III.   LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Rule 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; see also *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  See *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id*. at 323.  And so, for those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  See *Anderson*, 477 U.S. at 256

The Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).  Conclusory assertions of a defendant's state of mind and motivation are also not enough to withstand summary judgment. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988); *see also Foreman v. Weinstein*, 485 F. Supp. 2d 608, 612 (D. Md. 2007) ("[A] subjective, even if genuine, belief of discrimination will not shield a nonmoving plaintiff from a grant of summary judgment.").  Rather, a plaintiff must advance specific material evidentiary facts, not unsupported speculation. *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).

### B.  Title VII And Disparate Treatment Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.  There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the burden-shifting scheme set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

A plaintiff may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999).  In this regard, the Fourth Circuit has held that direct evidence of discrimination is that which demonstrates the defendant "'announced, or admitted, or otherwise unmistakably indicated that the [discriminatory consideration] was a determining factor.'"  *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (resolving an intentional discrimination claim in the ADEA context) (citation omitted).  And so, to overcome a summary judgment motion, a plaintiff "'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Brinkley*, 180 F.3d at 607 (quoting *Goldberg*, 836 F.2d at 848 (brackets existing)).

The Fourth Circuit has held that comments proffered as direct evidence of discrimination must be made by a final decisionmaker involved in the alleged adverse employment action.  *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 289 (4th Cir. 2004); *Schafer v. Md. Dep't of Health & Mental Hygiene*, 359 F. App'x 385, 389 (4th Cir. 2009).  The Fourth Circuit has also recognized that alleged discriminatory comments made years before the alleged adverse employment action were too remote to constitute direct evidence of discrimination.  *Birckbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994).

If the plaintiff cannot point to direct or indirect evidence of intentional discrimination, she may proceed under the *McDonnell-Douglas* burden-shifting framework.  *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992).  Under *McDonnell-Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell-Douglas Corp.*, 411 U.S. at 802.  A plaintiff alleging discrimination based upon failure to promote can establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected group; (2) there was a

10

specific position for which she applied; (3) she was qualified for the position; and (4) her employer denied her promotion and/or rejected her application under circumstances giving rise to an inference of unlawful discrimination.[3]  *Walton v. Harker*, 33 F.4th 165, 176 (4th Cir. 2022); *Alvarado v. Bd. of Trs. of Montgomery Cnty. Comm. Coll.*, 928 F.2d 118, 121 (4th Cir. 1991); *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 959-60 (4th Cir. 1996).  The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a *prima facie* case.  *See Hemphill v. ARAMARK Corp.*, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff can establish a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co*., 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

In this regard, in a failure-to-promote case, a plaintiff must prove that she was a better candidate for the position than the chosen applicant.  *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 844 (D. Md. 2004).  Given this, a plaintiff can establish pretext, by showing that she was more qualified than the candidate selected, or by amassing circumstantial evidence that undermines the credibility of her employer's stated reasons for the non-selection.  *Heiko v. Colombo Savs. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006).  But, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959 (citing *Burdine*, 450 U.S. at 253).

---

[3] The Fourth Circuit has held that the review of professorial tenure and promotion decisions should give deference to the employer's determination regarding a candidate's scholarly potential.  *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 376 (4th Cir. 1995); *see also Smith v. Univ. of N.C.*, 632 F.2d 316, 345 (4th Cir. 1980) (citations omitted).

## IV.    ANALYSIS

CCB has moved for summary judgment on the Plaintiff's employment discrimination claims, upon the grounds that the undisputed material facts show that: (1) the Plaintiff cannot adduce direct or indirect evidence of race or gender discrimination by CCB; (2) the Plaintiff cannot establish a *prima facie* case of discrimination, because she cannot provide evidence to show that CCB rejected her application under circumstances that give rise to an inference of discrimination; and (3) CCB had legitimate, nondiscriminatory reasons for not hiring the Plaintiff, which she cannot show were a pretext for unlawful race or gender discrimination. ECF No. 80-1 at 9-21. And so, CCB requests that the Court enter summary judgment in its favor and dismiss the amended complaint. *Id*. at 22.

The Plaintiff largely does not substantively address CCB's arguments in her response in opposition. *See generally* ECF No. 89-1. But, the Plaintiff generally argues that CCB is not entitled to summary judgment, because there are material factual disputes in this case regarding whether CCB rejected her application under circumstances that give rise to an inference of unlawful discrimination that preclude summary judgment. *Id*. at 21-23. Specifically, the Plaintiff argues that: (1) there is admissible evidence in this case of Dean Slezak's "racist actions" and CCB's disparate treatment of Black female employees by, among other things, promoting less qualified White males over Black females; (2) her former co-workers have testified that they believe Mr. Bernardy was "pre-selected" for the Assistant Dean of Workforce Solutions position; (3) there is admissible evidence to show that she was more qualified for the Assistant Dean position than Mr. Bernardy and that the selection process was altered to ensure that Mr. Bernardy was hired; and (4) there is a question for the jury regarding whether CCB rejected her application under circumstances that give rise to an inference of unlawful discrimination. *Id*. at 13-27. And so, the Plaintiff requests that the Court deny CCB's motion for summary judgment. *Id*. at 27.

For the reasons that follow, the undisputed material facts in this case show that the Plaintiff cannot establish a *prima facie* case of discrimination based upon failure to promote, because she cannot show that CCB declined to select her for the Assistant Dean of Workforce Solutions position under circumstances that give rise to an inference of unlawful discrimination. The undisputed material facts also demonstrate that the Plaintiff cannot show that CCB's

proffered legitimate, nondiscriminatory reasons for not selecting her for the Assistant Dean position were a pretext for discrimination. And so, the Court: (1) GRANTS CCB's motion for summary judgment and (2) DISMISSES the amended complaint.

### A. The Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination

As an initial matter, CCB argues with persuasion, and the Plaintiff does not appear to dispute, that the Plaintiff does not adduce any direct or indirect evidence to show intentional discrimination upon the basis of race or gender in this case. ECF No. 80-1 at 9-13; ECF No. 92 at 2; *see generally* ECF No. 89-1. Given this, the Court begins its analysis by considering whether the Plaintiff can establish a *prima facie* case of discrimination to prevail on her failure-to-promote claims.

In this regard, the undisputed material facts in this case show that the Plaintiff cannot produce evidence to satisfy the elements of her discrimination claims. To prevail on her failure-to-promote claims, the Plaintiff must show that: (1) she is a member of a protected group; (2) there was a specific position for which she applied; (3) she was qualified for the position; and (4) her employer denied her promotion and/or rejected her application under circumstances giving rise to an inference of unlawful discrimination. *Walton v. Harker*, 33 F.4th 165, 176 (4th Cir. 2022); *Alvarado v. Bd. of Trs. of Montgomery Cnty. Comm. Coll.*, 928 F.2d 118, 121 (4th Cir. 1991); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996). Because the parties agree that the Plaintiff is a member of a protected group, that she applied for the position of Assistant Dean of Workforce Solutions and that she met the qualifications for this position, the Court must determine whether the Plaintiff can establish the fourth element of her claims—that CCB rejected her application under circumstances giving rise to an inference of unlawful discrimination. ECF No. 80-1 at 14.

The undisputed material facts in this case make clear that the Plaintiff cannot show that CCB rejected her application for the Assistant Dean of Workforce Solutions position under circumstances giving rise to an inference of unlawful race or gender discrimination for several reasons. First, the unrebutted evidence in this case demonstrates that the Plaintiff cannot point to any statements or conduct during the selection process for the Assistant Dean position that would give rise to an inference that the search committee was influenced by racial or gender-based animus.

The Plaintiff alleges that the Assistant Dean selection process was influenced by discriminatory animus, because Dean Louise Slezak displayed "discriminatory animus" towards her prior to and during the selection process. ECF No. 36 at ¶ 51. To support this claim, the Plaintiff further alleges that Dean Slezak: (1) downplayed the Plaintiff's achievements in front of her colleagues "while being noticeably more congratulatory of the work of [the Plaintiff's] White male colleagues;" (2) "ask[ed] blatantly racist questions about Blacks and then sarcastically look[ed] to [the Plaintiff] to humiliate her as if she were a representative for all Blacks;" (3) referred to people in Baltimore City, which is majority Black, as "jumping rent;" and (4) stated that she "didn't like it" in Martha's Vineyard, after expressing surprise that "[t]here were a lot of Black people" there. *Id.* at ¶¶ 22, 24-26. In addition, the Plaintiff alleges that there is evidence of racial and gender-based discrimination, because Dean Slezak punished her for approving her subordinates' incorrect timesheets, but did not discipline two other Directors—who are not Black women—who also "supervised employees who [had] been charged with committing timecard fraud." *Id.* at ¶ 36.

But, the Plaintiff fails to point to any conduct or statements by Dean Slezak, or any other member of the search committee, that show that she was not selected for the Assistant Dean of Workforce Solutions position due to her gender. *See generally* ECF Nos. 36, 89-1; *see also* ECF No. 93 at 386-88. Moreover, to the extent that statements and comments attributed to Dean Slezak could be construed to reflect "discriminatory animus" based upon race, the undisputed material facts also make clear that Dean Slezak was not the final decisionmaker with regards to the selection of the new Assistant Dean. ECF No. 90 at ¶ 18; *see also* ECF No. 93 at 480.

It is also undisputed that none of the alleged discriminatory statements that the Plaintiff attributes to Dean Slezak occurred at, or near, the time of the selection process for the Assistant Dean position. In fact, the evidence before the Court shows that Dean Slezak's alleged comments about her trip to Martha's Vineyard in September 2017 occurred a year before the Plaintiff applied for the Assistant Dean of Workforce Solutions position. ECF No. 81 at ¶ 5; *see also* ECF No. 93 at 901. The parties also agree that Dean Slezak issued a Corrective Action Notice to the Plaintiff on December 12, 2018, which was several weeks after the selection process for the Assistant Dean position had concluded. ECF No. 90 at ¶ 21; *see* ECF No. 93 at 617-18.

14

Given these undisputed facts, the evidence before the Court regarding Dean Slezak's alleged statements and conduct simply do not give rise to an inference of discrimination with regards to the Plaintiff's non-selection for the Assistant Dean position. *See, e.g.*, *Walton*, 33 F.4th at 177-78 (noting that comments purporting to show discriminatory animus must have a "nexus" to the contested employment decision); *Birckbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (holding that alleged discriminatory comments made years before the alleged adverse employment action were too remote to constitute evidence of discrimination).[4]

The Plaintiff's argument that there is an inference of discrimination in this case, because Mr. Bernardy "was far less qualified than [Plaintiff] in both tenure, experience and in all areas pertinent to" the position, is also contradicted by the unrebutted evidence.  ECF No. 36 at ¶ 60. The undisputed material facts show that, at the time of her application, the Plaintiff had served as the interim chair of the Baltimore County Department of Economic and Workforce Development, leading the WIOA planning and writing team for services to individuals with barriers to employment.  ECF No. 89-1 at ¶ 16; *see also* ECF No. 93 at 462.  It is also undisputed that the Plaintiff's work involved partnering with agencies across Baltimore County to develop strategies to improve access and funding streams to services.  ECF No. 89-1 at ¶ 16.

By comparison, it is undisputed that at the time of his application, Mr. Bernardy was serving as Director of Connections to Employment for CCB; serving as the Interim Director of CCB's CAFL; and had prior experience managing large numbers of people, which CCB maintains is an important skill for the Assistant Dean of Workforce Solutions position.  ECF No. 80-1 at ¶¶ 7-8; *see* ECF No. 93 at 470, 472.  Notably, the unrebutted evidence also shows that, prior to applying for the Assistant Dean position, Mr. Bernardy had operational responsibility for the Advanced Skills Learning Center, which is a $1.8 million nonprofit adult technical education center focused on workforce solutions and job placements.  ECF No. 80-1 at ¶ 9; *see* ECF No. 93 at 472-73.

---

[4] The Plaintiff does not identify the timing of Dean Slezak's alleged comment about people in Baltimore City "jumping rent."  ECF No. 36 at ¶ 25; ECF No. 80-1 at 10 n.5.

The evidence before the Court also shows that Dean Netzer testified during his deposition that the Plaintiff was less qualified for the Assistant Dean position than Mr. Bernardy, because she did not demonstrate a broad background in welfare-to-work and workforce development systems, a familiarity with WIOA, or experience with writing or managing grants or performance-based funding. ECF No. 93 at 480. Dean Netzer also testified that Mr. Bernardy was more qualified than Plaintiff for the Assistant Dean of Workforce Solutions position, because the Single Step program that Plaintiff had previously managed is relatively small and has a narrow focus. *Id.*

The Plaintiff points to no evidence to rebut Dean Netzer's testimony in this regard, nor does she dispute the evidence before the Court regarding Mr. Bernardy's qualifications. ECF No. 89-1 at 13-15. Given this, the Plaintiff's claim that she was more qualified than Mr. Bernardy for the Assistant Dean position lacks evidentiary support.

The Plaintiff's reliance upon the testimony of other CCB employees, "about the racist and biased environment" fostered by Dean Slezak and CCB, to support her discrimination claims is also misplaced. *Id.* at 23. The Plaintiff argues that there are material facts in dispute about whether there is an inference of discrimination in this case, because:

- Karen Paris, Director of Marketing and Adjunct Faculty Support, testified in her deposition that she saw an email from Dean Netzer, which stated that CCB had created three Assistant Dean positions for certain White male employees, including Mr. Bernardy, so they would not leave CCB;

- Don Elliot, Director of Continuing Education, who also interview for the Assistant Dean of Workforce Solutions position, testified in his deposition that observed irregularities in CCB's hiring process and took issue with the composition of the search committee; and

- Mr. Elliot also testified that he believed the interview questions for the Assistant Dean position were slanted in favor of Mr. Bernardy, and that he was equally, if not better, qualified than Mr. Bernardy for the role.

ECF No. 89-1 at 22-24; *see also* ECF No. 93 at 1065-67, 1100-02. But, even accepting this testimony as true, the undisputed material facts in this case show that the Plaintiff was not selected for the Assistant Dean position because Mr. Bernardy was more qualified and received a superior evaluation during CCB's selection process. Notably, it is undisputed that the applicants' cumulative interview scores were "an important part of selecting the Assistant Dean for Workforce Solutions." ECF No. 80-1 at ¶ 14; *see* ECF No. 90 at ¶ 14. It is also undisputed

that Mr. Bernardy received the highest interview score (285) of the three applicants for the Assistant Dean of Workforce Solutions position, and that the Plaintiff received the lowest score (181) of the three applicants for the position. ECF No. 81 at ¶¶ 10-11.

The unrebutted evidence also shows that, based upon these results, the search committee recommended Mr. Bernardy for the Assistant Dean position, because he was the most qualified applicant for the job, "[b]ased on his relevant experience, qualifications, and skills, which were demonstrated in his resume and reflected in the scoring of his interview responses." ECF No. 80-1 at ¶ 18. Notably, Dean Netzer testified during his deposition that Mr. Bernardy was the most qualified applicant for the position, because he: (1) demonstrated a history of managing large organizations and budgets; (2) had experience understanding all facets of Workforce Solutions programming; (3) had existing relationships with the agencies involved in Workforce Solutions programming; (4) had extensive experience with WIOA funding; and (5) had significant experience writing and managing grants. ECF No. 93 at 479.

Given this evidence, the Plaintiff can neither show that she was the most qualified applicant for the Assistant Dean of Workforce Solutions position, nor that there is a genuine dispute with regards to the material facts about why she was not selected for this position.[5] *Walton*, 33 F.4th at 178; *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 844 (D. Md. 2004). And so, the Court must GRANT CCB's motion for summary judgment on the Plaintiff's discrimination claims. Fed. R. Civ. P. 56.

**B.  The Plaintiff Cannot Show Pretext**

As a final matter, the Court also observes that, even if the Plaintiff could establish a *prima facie* case of discrimination, her discrimination claims would still fail because the undisputed material facts show that the Plaintiff cannot show that CCB's stated reasons for her non-selection were a pretext for discrimination. If the Plaintiff can establish a *prima facie* case of discrimination, the burden of production shifts to CCB to present a legitimate, nondiscriminatory reason for the decision not to hire her as Assistant Dean of Workforce Solutions. *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (citing *Tex.*

---

[5] To the extent that the Plaintiff maintains that this evidence shows either direct or indirect evidence of discrimination, her arguments fail for the reasons stated above.

*Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If CCB succeeds in doing so, the Plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by [CCB] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  Relevant here, the Plaintiff can establish pretext in this case by showing that she was better qualified than Mr. Bernardy for the Assistant Dean position, or by amassing other circumstantial evidence that undermines the credibility of CCB's stated reasons for her non-selection. *Heiko v. Colombo Savs. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006).

As discussed above, the undisputed material facts show that Mr. Bernardy was more qualified than the Plaintiff for the Assistant Dean position.  *See* ECF No. 93 at 479 (Dean Netzer testifying that  Mr. Bernardy was the most qualified applicant for the position, because he: (1) demonstrated a history of managing large organizations and budgets; (2) had experience understanding all facets of Workforce Solutions programming; (3) had existing relationships with the agencies involved in Workforce Solutions programming; (4) had extensive experience with WIOA funding; and (5) had significant experience writing and managing grants).  Given this, CCB represents to the Court that it selected Mr. Bernardy for this position due to his superior qualifications.  ECF No. 80-1 at 15.

While the Plaintiff understandably disagrees with CCB's decision to select and hire Mr. Bernardy for the Assistant Dean position, she points to no evidence to show that the CCB's reasons for doing so were a pretext for racial or gender-based discrimination. *Heiko*, 434 F.3d at 259; *Evans*, 80 F.3d at 960.  For this reason, the Court also must GRANT CCB's motion for summary judgment.  Fed. R. Civ. P. 56.

## V.    CONCLUSION

In sum, the undisputed material facts in this case show that the Plaintiff cannot establish a *prima facie* case of discrimination, based upon race or gender, to prevail on her failure-to-promote claims.  The undisputed material facts also show that the Plaintiff cannot show that CCB's proffered legitimate, nondiscriminatory reasons for not selecting her for the Assistant Dean of Workforce Solutions position were pretextual.  And so, for the foregoing reasons, the Court:

(1) **GRANTS** CCB's motion for summary judgment (ECF No. 80); and

(2) **DISMISSES** the amended complaint.

A separate Order shall issue.


**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
